UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BRYAN HART, | No. C 08-01498 MHP |
| Petitioner, | |
| v. | **MEMORANDUM & ORDER** |
| B. CURRY, warden, | **Re: Petition For Writ of Habeas Corpus** |
| Respondent. | |

Petitioner David Bryan Hart ("Hart" or "petitioner"), a state prisoner at the Correctional Training Facility in Soledad, California, filed this federal habeas petition pursuant to 28 U.S.C. section 2254. In his petition, Hart challenges the decision of the Fresno County Superior Court upholding California Governor Arnold Schwarzenegger's reversal of the California Board of Parole Hearing's grant of parole to Hart. Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

In 1983, a Fresno County Superior Court jury found Hart guilty of second-degree murder. Docket No.1 (Pet.), Exh. B (Judgment) at 1. Hart was convicted of murdering his ex-girlfriend's new boyfriend. Pet., Exh. E (Parole Reversal). To commit the crime, Hart hid under a blanket in the new man's car; once the man entered his car, Hart ordered him to drive to a nearby orchard, where

1  Hart shot him three times in the head. *Id.* at 3. Pursuant to California's indeterminate sentencing
2  structure, Hart was sentenced to fifteen years to life in prison. Pet. at 2.

3  After having been denied parole on eight prior occasions, on August 17, 2006, a panel of the
4  California Board of Parole Hearings ("the Board") conducted a hearing and recommended that Hart
5  be granted parole. Pet., Exh. A (Tr. of Parole Hr'g) at 47. The panel concluded that Hart did not
6  pose an unreasonable risk to public safety for a number of reasons. Firstly, the panel noted that Hart
7  lacked a significant criminal history of violent crime and any previous criminal record of assaulting
8  others, and had a stable social history. *Id.* Further, the panel observed that while in prison, Hart
9  enhanced his ability to function within the law upon release by participating in educational,
10 vocational, self-help and therapeutic programs. *Id.* The panel also noted that Hart maintained close
11 family ties and relationship via visits and letters, and secured a reasonable parole plan including
12 living with his parents and a job offer. *Id.* at 47-48. The panel also felt that Hart's maturation,
13 growth, greater understanding and advanced age reduced his probability of recidivism. *Id.* at 47.
14 This conclusion was supported by a favorable 2005 psychiatric evaluation in which the doctor noted
15 that there was a minimal risk to the public if he was released. *Id.* at 48. Finally, the panel noted that
16 a representative from the Office of the District Attorney for Fresno County, the office that
17 prosecuted Hart, attended Hart's hearing and did not oppose parole. *Id.* at 48. Pursuant to
18 California Penal Code section 3041(b), the panel's recommendation became the final decision of the
19 Board 120 days later on December 15, 2006.

20 On January 10, 2007, Governor Arnold Schwarzenegger, after conducting a discretionary
21 review of the grant of parole permitted by Article V, section 8 of the California Constitution[1],
22 reversed the Board's decision. Pet., Exh. E (Parole Reversal). Such reviews are governed by title
23 15, section 2402 of the California Code of Regulations.[2] In his decision, the Governor recognized
24 the various positive factors which led to the Board's grant of parole. *Id.* at 2. The Governor
25 concluded, however, that "despite the positive factors . . . the second degree murder for which [Hart]
26 was convicted was especially heinous considering the level of premeditation involved." *Id.* at 3.
27 The Governor found "[t]he gravity of the second-degree murder . . . was alone sufficient . . . to

28

2

1 conclude presently that [Hart's] release from prison would pose an unreasonable public-safety risk."
2 *Id.* at 3. Accordingly, the Governor reversed the Board's decision to grant parole to Hart.

3 After the Governor's reversal, Hart filed a petition for a writ of habeas corpus in the
4 Superior Court of Fresno County challenging the Governor's decision. Docket No. 7 (Ans.), Exh. 1
5 (Super. Ct. Pet.). On September 24, 2007, the Superior Court denied the petition for a writ of habeas
6 corpus, concluding that "upon considering the record as a whole . . . there was at least 'some
7 evidence' to support the Governor's decision to reverse parole." *Id.* at 2.

8 Hart appealed the Superior Court's denial of his petition to the California Court of Appeal.
9 His appeal was summarily denied. Pet., Exh. G (Cal. Ct. App. Order). Hart then filed a petition for
10 review with the California Supreme Court. Ans., Exh. 9 (Pet. for Review). On January 23, 2008,
11 the court denied the petition. Ans., Exh. 10 (Cal. Docket). Subsequently, Hart filed a petition for
12 habeas corpus with this court pursuant to 28 U.S.C. section 2254. Hart argues that the Governor's
13 2007 decision to reverse the grant of parole violated his constitutional right to due process of law
14 because it was inappropriately based solely on nature of his commitment offense.

15

16 JURISDICTION AND VENUE

17 As is discussed at greater length below, the court has subject-matter jurisdiction over this
18 habeas action for relief under 28 U.S.C. section 2254. 28 U.S.C. § 1331. This action is in the proper
19 venue because the challenged action concerns the execution of the sentence of a prisoner housed at a
20 prison in Monterey County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

21

22 EXHAUSTION

23 Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings
24 either the fact or length of their confinement are required first to exhaust state judicial remedies,
25 either on direct appeal or through collateral proceedings, by presenting the highest state court
26 available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

27
28

3

federal court. *See* 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

LEGAL STANDARD

This court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, *id.* at 407-09, while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-06. An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the "last reasoned decision" of the highest state court that addressed the merits of the petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Here, the last reasoned decision was the decision of the California Superior Court.

4

## DISCUSSION

Hart's only claim is that the Superior Court unreasonably applied federal law by concluding that Governor Schwarzenegger satisfied California's "some evidence" test, discussed at length below, when he reversed the Board's grant of parole; Hart contends that this error by the Superior Court necessitates that this court grant his petition for habeas corpus.

### I. The "Some Evidence" Standard

California's parole scheme, governed by California Penal Code section 3041(b), "provides that the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction." *In re Rosenkrantz*, 29 Cal. 4th 616, 654 (2002) (*Rosenkrantz*).[3] In determining whether a longer period of incarceration is required, the Board's discretion is cabined by title 15, section 2402 of the California Code of Regulations. Section 2402 requires that the Board consider all the relevant, reliable information available to the panel including the prisoner's social history, past and present mental state, past criminal history, past and present attitude toward the crime, as well as any other information which bears on the prisoner's suitability for release. Cal. Code. Regs. tit. 15, § 2402(b). Additionally, section 2402 enumerates specific factors to be considered when weighing suitability for parole. *Id.* § 2402(c)-(d). Subsection (c) lists certain circumstances tending to demonstrate unsuitability for parole such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background.[4] *Id.* § 2402(c). Subsection (d) lists factors demonstrating suitability for parole such as an inmate's rehabilitative efforts, demonstration of remorse and the mitigating circumstances of the crime.[5] *Id.* § 2402(d). Finally, the regulations make clear that the parole decision is highly discretionary stating, "[t]hese circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." *Id.* § 2402(c), (d).

After the Board decides whether or not to grant parole to an inmate, the Governor is permitted to review the decision within thirty days. Cal. Const. art. V, § 8. This review is also highly discretionary. *In re Lawrence*, 44 Cal. 4th 1181, 1204 (2008) (*Lawrence*). "Although the

5

Governor's decision must be based upon the same factors that restrict the Board in rendering its parole decision, the Governor undertakes an independent, de novo review of the inmate's suitability for parole." *Id.* (citing *Rosenkrantz*, 29 Cal. 4th at 660) (internal quotation marks and citation omitted). For both the Board and the Governor, "the paramount consideration . . . under the governing statutes is whether the inmate *currently* poses a threat to public safety and thus may not be released on parole." *Id.* at 1210 (emphasis added).

While both the Board and Governor exercise a high degree of discretion in making parole determinations, this discretion is not without limits. Since at least 2002, California courts have required that, in order to protect inmates' due process rights, the Governor's decision to reverse a grant of parole by the Board must be supported by "some evidence." *Rosenkrantz*, 29 Cal. 4th at 626. The "some evidence" test requires a reviewing court to permit the Governor's reversal or modification of the Board's decision to stand where "some evidence in the record before the [Governor] supports the decision to deny parole, based upon the factors specified by statute and regulation." *Rosenkrantz*, 29 Cal. 4th at 658.

In *Lawrence*, the California Supreme Court further clarified the contours of the "some evidence" standard, specifically as it related to determinations of unsuitability for parole predicated primarily or solely upon the nature of an inmate's commitment offense. 44 Cal. 4th at 1206-13.[6] The court held that the circumstances of an inmate's conviction may, standing alone, serve as "some evidence" of current dangerousness; however, "under the statute and the governing regulations, the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Id*. at 1212. In so holding, the court rejected a line of cases from lower courts that permitted the Board and the Governor to find an inmate unsuitable for parole simply if they found facts to support the existence of an unsuitability factor, including that the commitment offense was particularly aggravated. *See id.* at 1208. In contrast to those cases, which adopted a procedural approach to the "some evidence" test, the court held that "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole

6

1  decision; the significant circumstance is how those factors interrelate to support a conclusion of

2  current dangerousness to the public." *Id.* at 1212.

3        In the key passage of *Lawrence,* the court concluded

4        that although the Board and the Governor may rely upon the aggravated
      circumstances of the commitment offense as a basis for a decision denying parole, the
5        aggravated nature of the crime does not in and of itself provide some evidence of
      *current* dangerousness to the public unless the record also established that something
6        in the prisoner's pre- or post-incarceration history, or his or her current demeanor and
      mental state, indicates that the implications regarding the prisoner's dangerousness
7        that derive from his or her commission of the commitment offense remain probative
      to the statutory determination of a continuing threat to public safety.

8  *Id.* at 1214 (emphasis in original); *id.* at 1213-14 ("[I]t is not the circumstance that the crime is

9  particularly egregious that makes a prisoner unsuitable for parole—it is the implication concerning

10  future dangerousness that derives from the prisoner having committed that crime."). The court noted

11  that while this standard is "unquestionably deferential," it "requires more than a rote recitation of the

12  relevant factors with no reasoning establishing a rational nexus between those factors and the

13  necessary basis for the ultimate decision." *Id.* at 1210. To allow the denial of parole based solely on

14  the circumstances of the commitment offense without regard to the effect of time and other

15  rehabilitative gains would allow the denial of parole *in perpetuum* without considering what risk the

16  prisoner currently poses to the public. *Id.* at 1211. Accordingly, if the Board or the Governor seek

17  to rely exclusively on the commitment offense in denying an inmate parole, the Board or Governor

18  must demonstrate by "some evidence" how the aggravated circumstances of the commitment

19  offense, in light of the totality of the record, indicate that the prisoner poses a current unreasonable

20  risk to public safety.

21        Before determining whether the Governor's reversal of Hart's grant of parole violated the

22  "some evidence" requirement, the court must contend with two threshold issues: (1) whether Hart's

23  petition raises a "federal question," such that this court has subject-matter jurisdiction, and, if yes,

24  (2) whether *Lawrence* can be applied retroactively.

25  II.     Federal Jurisdiction

26        In its moving papers, the state argues that the Superior Court could not have unreasonably

27  applied clearly established federal law because the United States Supreme Court has not clearly

28

7

established that parole determinations in California implicate a federal, constitutionally-protected liberty interest. Accordingly, the state argues that the petition does not raise a "federal question" invoking this court's jurisdiction pursuant to 28 U.S.C. section 2254. *Id.* The state, however, is mistaken.

In large part, Hart's claim initially rested on *Hayward v. Marshall*, 512 F.3d 536, 542 (9th Cir. 2008) (*Hayward I*) *vacated by Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008), in which, a panel of the United States Court of Appeals for the Ninth Circuit concluded that the United States Constitution required that parole denials in California be supported by "some evidence." Subsequent to the completion of the initial briefing in this case, the Ninth Circuit, sitting *en banc,* vacated the panel's decision in *Hayward I* and affirmed the district court's denial of a writ of habeas corpus. *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (*Hayward II).* After the Ninth Circuit issued *Hayward II*, this court ordered the parties to complete simultaneous supplemental briefing to address the effect of *Hayward II* on the instant petition.

In *Hayward II,* the Ninth Circuit squarely held that claims like Hart's must be heard in federal habeas proceedings. The *Hayward II* court concluded that "courts in this circuit . . . [must] decide whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.' " 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)); *see also Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam); *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). In so holding, *Hayward II* identified a state-created liberty interest—the "some evidence" requirement—protected by the federal Due Process Clause. *See Pearson,* 606 F.3d at 611 (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "By holding that a federal habeas court may review the reasonableness of the state court's application of the California 'some evidence' rule, *Hayward [II]* necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause." *Id.* at 609; *see also Sandin v. Connor*, 515 U.S. 472, 483-84 (1995) (recognizing that states may, under certain circumstances, create liberty interests protected by the Due Process Clause); *Bd. of Pardons v. Allen*,

8

482 U.S. 369, 371 (1987) (holding that state statutes "may create liberty interests in parole release that are entitled to protection under the due process clause" (quoting *Greenholtz*, 442 U.S. at 12)). Accordingly, Hart's petition raises a federal question reviewable by this court under 28 U.S.C. section 2254.

III.     Retroactivity

Because the decisions by the Superior Court, Court of Appeal and California Supreme Court affirming the Governor's reversal of the Board's grant of parole to Hart all occurred prior to *Lawrence*, Hart would only be eligible for relief under *Lawrence* if *Lawrence* has retroactive effect. Although the Ninth Circuit has not directly addressed this question, almost every federal district court to confront this issue has concluded that the "some evidence" standard articulated in *Lawrence* applies retroactively to pre-*Lawrence* parole decisions. *See Hinkles v. Vaughn*, No. CV 05-0024-ODW, 2009 WL 6312276, at *15 n.13, *16 n.15 (C.D. Cal. Dec. 4, 2009) (concluding that there was no need to analyze retroactivity because *Lawrence* merely clarified existing California law); *Nix v. Hartly*, No. EDCV 07-1435, 2009 WL 3055398, at *6 n.7 (C.D. Cal. Sept. 24, 2009); *Branham v. Davison*, No. EDCV 06-1294-ODW OP, 2009 WL 3055404, at *7 n.7 (C.D. Cal. Sept. 22, 2009); *see also Styre v. Adams*, 635 F. Supp. 2d 1166, 1170 (E.D. Cal. 2009) (applying the "some evidence" standard from *Lawrence* to a pre-*Lawrence* denial of parole). In fact, only one court has concluded that *Lawrence* should not be applied retroactively. *See Gzikowski v. Dexter*, No. EDCV 08-01189 RGK, 2009 WL 1530817, at *7 (C.D. Cal., May 29, 2009) (holding that *Lawrence* cannot be applied retroactively because nothing in the California Supreme Court's decision indicates that the court intended its decision to apply retroactively).

As a general rule, California judicial decisions apply retroactively with only limited exceptions.[7] *People v. Guerra*, 37 Cal. 3d 385, 399 (1984) (citing *Solem v. Stumes,* 465 U.S. 638 (1984)). To determine whether a decision should be given retroactive effect, "the court first undertakes a threshold inquiry: does the decision establish a new rule of law?" *Id.* at 399. If it does not, "no question of retroactivity arises" because there is no material change in the law. *Id.* (citing

9

1 *Donaldson v. Superior Court,* 35 Cal. 3d 24, 36 (1983) (plurality op.); *People v. Garcia*, 36 Cal. 3d

2 539, 547-548 (1984); *United States v. Johnson*, 457 U.S. 537, 549 (1982)).

3       On its face, *Lawrence* does not establish a new rule of law, and thus it must be applied

4 retroactively. In *Lawrence*, the court held:

> our recognition that a proper review of parole decision must focus upon "some evidence" of current dangerousness, does not alter our recognition in [prior cases] that the purpose of the parole statutes is to guarantee that the decision makers fully have addressed the public safety implications of releasing on parole any inmate serving a maximum term of life imprisonment. The relevant determination for the Board and the Governor *is, and always has been*, an individualized assessment of the continuing danger and the risk to public safety posed by the inmate.

9 44 Cal. 4th at 1227 (emphasis added). Accordingly, the California Supreme Court in *Lawrence*

10 neither intended to create a new rule of law or to expressly overrule an existing one, but merely

11 clarified the existing standard governing the judicial review of parole denial decisions. Because

12 giving effect to a statutory rule that the courts had theretofore misconstrued does not establish a new

13 rule of law, *People v. Lopez*, 27 Cal. Rptr. 2d 25, 26 (Ct. App. 1993) (citing *Guerra,* 37 Cal. 3d at

14 399 n.13), no question over the retroactive application of *Lawrence* is raised and California's

15 presumption of retroactivity applies.

16       Further, retroactive application of *Lawrence* to *pre-Lawrence* parole decisions is consistent

17 with *Hayward II*. In *Hayward II*, the court applied the California "some evidence" standard

18 articulated in *Lawrence* to a pre-*Lawrence* decision by the Governor to deny parole.[8] In light of

19 this, to not apply *Lawrence* retroactively would contradict the clear mandate of *Hayward II*.

20       Accordingly, this court must determine whether the Superior Court reasonably applied the

21 California "some evidence" standard, as it is articulated in *Lawrence*, when it affirmed the

22 Governor's reversal of the Board's grant of parole.

23 IV.    <u>Application of the "Some Evidence" Standard</u>[9]

24       In determining whether the Superior Court reasonably applied the proper "some evidence"

25 standard, this court may not supplant its judgment for the Superior Court's. *William (Terry)*, 529

26 U.S. at 411. It may not issue the writ "simply because that court concludes in its independent

27 judgment that the relevant state-court decision applied clearly established federal law erroneously or

28

10

incorrectly." *Id.* Rather, to support granting the writ, the application must be "objectively unreasonable". *Id.* at 409.

The record in this case indicates that the Governor's sole justification for reversing the Board's grant of parole was the nature of Hart's commitment offense. The Governor begins his discussion of the suitability and unsuitability factors by listing a litany of "positive factors" favoring the granting of parole. The statement of reasons for reversal specifically mentions that Hart: was "discipline-free for approximately 20 years"; had "made efforts in prison to enhance his ability to function within the law upon release," including earning his Associate in Arts Degree in Business Administration, completing vocational training in upholstery work and participating in "an array of self-help and therapy, including Alcoholics Anonymous, Narcotics Anonymous, Life Plan for Recovery, Category T, Category X, Creative Conflict Resolution, Impact, Life Plan for Recovery, Morals and Values, Breaking Barriers, Stress Management, Hands of Peace, Life Skills, and Gavel Club"; had "maintain[ed] seemingly solid relationships and close ties with supportive family and friends"; had "received favorable evaluations from various correctional and mental-health professionals over the years"; and had made both living and professional arrangements for his release. Parole Reversal at 1-2.[10]

Nonetheless, the Governor ultimately concluded that the Board's decision to grant parole should be reversed. In reaching that decision, the Governor relied upon two of the unsuitability factors, both of which related solely to the commitment offense. First, the Governor stated that "[d]espite the positive factors I considered, the second-degree murder for which Mr. Hart was convicted was especially heinous considering the level of premeditation involved." *Id.* The Governor then proceeded to describe the manner in which Hart murdered the victim, without referencing, in any way, how the murder reflected on Hart's current dangerousness. Second, the Governor wrote that "Mr. Hart's action . . . demonstrated an exceptionally callous disregard for [the victim's] suffering because, according to the probation report, after being shot twice, [the victim] reportedly asked Mr. Hart if he was dead. Mr. Hart then shot him a third time in the back of the head." *Id.* The Governor then concluded that "[t]he gravity of the second-degree murder committed

11

1 by Mr. Hart is alone sufficient for me to conclude presently that his release from prison would pose

2 an unreasonable public-safety risk." *Id.* The Governor ends the statement by explaining that

> [g]iven the current record before me, and after carefully considering the very same factors the Board must consider, I find that the gravity of the murder perpetrated by Mr. Hart presently outweighs the positive factors. Accordingly, because I believe his release would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Hart.

*Id.*

The Superior Court, in denying Hart's habeas petition, held simply that "[u]pon consideration of the record as a whole, . . . there was at least 'some evidence' to support the Governor's decision to reverse the Board's grant of parole." Super. Ct. Order at 2. The court explained that "[t]he evidence supports the Governor's conclusion that the petitioner's crime was especially cruel and heinous execution-style murder, and it was committed in a dispassionate and calculated manner. . . . The premeditated and vicious nature of the crime is some evidence, in itself to support the Governor's decision to reverse the Board's grant of parole. Consequently, the court cannot overturn the Governor's decision." Super. Ct. Order at 3.[11]

The Superior Court engaged in exactly the type of reasoning that *Lawrence* proscribes. Rather than considering whether the unsuitability factors weighed by the Governor were supported by "some evidence" *and* spoke to the current threat that Hart posed to society, as required by *Lawrence*, the court simply determined that because the Governor identified "some evidence" of an unsuitability factor—the commission of the crime in "an especially heinous, atrocious or cruel manner"—the Governor acted reasonably in reversing Hart's grant of parole. Cal. Code. Regs. tit. 15, § 2402(c)(1). *Lawrence*, however, requires more: "the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." *Lawrence*, 44 Cal. 4th at 1214. Nowhere in the reversal statement does the Governor cite to anything in Hart's "pre- or post-incarceration

12

history" or to his "current demeanor and mental state" to explain why Hart's commitment offense "remain[s] probative" as to whether Hart is a "continuing threat to public safety."[12] The Governor's reversal is marked by the same characteristics that the *Lawrence* court found dispositive in that case:

> the Governor has neither disputed the petitioner's rehabilitative gains nor, importantly, related the commitment offense to current circumstances or suggested that any further rehabilitation might change the ultimate decision that petitioner remains a danger; mere recitation of the circumstances of the commitment of the offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required 'modicum of evidence' of unsuitability.

*Id.* at 1227. The Governor's reversal of Hart's grant of parole therefore was not supported by "some evidence," as *Lawrence* defines the term. Accordingly, the Superior Court's determination that the Governor satisfied the "some evidence" standard was an unreasonable application of the test. The Superior Court's error requires that this court grant Hart's petition for habeas corpus.[13]

## CONCLUSION

For the reasons stated above, the court finds that the Superior Court's application of the "some evidence" standard was an unreasonable application of clearly established federal law pursuant to 28 U.S.C. section 2254. Accordingly, Hart's petition for habeas corpus is GRANTED. Respondent is ordered to release petitioner within thirty (30) days of the entry of judgment on such terms and conditions as may be set by the Board. The California Department of Corrections and Rehabilitation is directed to credit the period of time from January 10, 2007, the date of the Governor's reversal of the Board's grant of parole, to the date of petitioner's release toward petitioner's parole term.

IT IS SO ORDERED.

Dated: August 4, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

14

# **ENDNOTES**

1. Article 5, section 8(b) of the California Constitution states that, "No decision of the parole authority of this State with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute."

2. Section 2402 sets forth the information and circumstances that are to be considered by both the Parole Board and the Governor when determining the status of a prisoner's parole. *See* Cal. Code. Regs. tit. 15, § 2402. Specifically, subsections (c) and (d) articulate the circumstances which show either suitability or unsuitability for parole. *Id.*

3. In relevant part, California Penal Code section 3401(b) provides that:

> The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

4. California Code of Regulations, title 15, section 2402(c) reads:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>>
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

5. California Code of Regulations, title 15, Section 2402(d) reads:

Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

6. On the same day that the California Supreme Court decided *Lawrence*, it also decided a companion case, *In re Shaputis*, 44 Cal. 4th 1241 (2009) (*Shaputis*). Together, *Shaputis* and *Lawrence* clarify the California "some evidence" standard. However, *Shaputis* did not alter the boundaries of the "some evidence" standard as it was articulated in *Lawrence*, instead directly incorporating the standard in *Lawrence*. Accordingly, the court will refer solely to *Lawrence* for the purposes of discussing the "some evidence" standard in this case.

7. *See e.g., Kriesher v. Mobil Oil Corp.*, 243 Cal. Rptr. 2d 662, 672 (Ct. App. 1988) (concluding that judicial decisions holding that contracting party's right to refuse consent to assignment had to be exercised in accordance with standards of commercial reasonableness and good faith would not be retroactively applied to conduct involving franchise agreement where contrary rule had prevailed at time all actions which subsequently formed basis for litigation occurred).

16

8. In *Hayward II*, the court applied the *Lawrence* "some evidence" standard to then Governor Gray Davis's 2003 decision to reverse the Board's grant of his parole . 603 F.3d at 550.

9. The state suggests that it is improper for the court to determine whether the Superior Court reasonably applied the "some evidence" test, and that instead, the court should only evaluate whether Hart received the minimal procedural protections mandated by *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979). Ans. at 6. In *Greenholtz,* the Supreme Court established that the terms of a state's parole statute (1) determine whether the statute creates a liberty interest protected by the Due Process Clause and (2) delineate the contours of the process necessary to comport with the Constitution. 442 U.S. at 16. The *Greenholtz* court held that neither the Nebraska statute at issue nor the federal constitution required that all inmates receive a full parole hearing on an annual basis or that the parole board issue written reasons for the denial of parole. *Id.* at 14-16. Further, the Supreme Court held that by providing an opportunity to be heard and a statement for the reasons for denying parole, the Nebraska procedures complied with the federal Due Process Clause. *Id.* at 16.

In focusing on the narrow holding in *Greenholtz*, the government overlooks a more relevant rule established in *Greenholtz* and a subsequent case, *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987). Together, those cases stand for the clearly established proposition that state parole systems "may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Allen*, 482 U.S. at 371. The California Supreme Court held, in *Lawrence*, that the state's parole statute and regulations require that the an inmate be released unless there is "some evidence" of future dangerousness. The *Lawrence* court further defined what type of evidence did and did not constitute "some evidence." In so holding, the California Supreme Court created a liberty interest protected by the Due Process Clause. *See Pearson,* 606 F.3d at 611 ("California law gives rise to a liberty interest on the part of its prisoners covered by its parole system. Having guaranteed the prisoners of the state that they will not be denied a parole release date absent 'some evidence' of current dangerousness, California is not permitted under the federal Constitution arbitrarily to disregard the 'some evidence' requirement in any particular case."). According to California law, that liberty interest includes substantive, as opposed to merely procedural, protections. *See Cooke*, 606 F.3d at 1214 (explaining that unlike the Nebraska statutes with which the United States Supreme Court was confronted in *Greenholtz*, the Ninth Circuit had "the benefit of extensive guidance from the California Supreme Court as to the scope of the liberty interest at issue"; and holding that the "[t]he 'some evidence' requirement . . . imposes substantive rather than purely procedural constraints on state officials' discretion to grant or deny parole . . . ."). Thus, although no United States Supreme Court opinion has explicitly held that California inmates' Due Process rights are violated if the Governor fails to adhere to the "some evidence" standard, that rule is nonetheless clearly established pursuant to *Allen* and *Greenholtz*. Because it is clearly established, this court must enforce it.

10. Notably, the Governor omitted any mention that the Fresno County District Attorney's Office attended Hart's hearing and did not oppose parole. Tr. of Parole Hr'g at 48.

11. It should be noted that the Superior Court denied Hart's habeas petition without the benefit of the California Supreme Court's decision in *Lawrence*. As is discussed above, however, *Lawrence* must be applied retroactively because it clarified an existing rule of law.

12. The Governor did explain why he placed no credence in the Board's conclusion that Hart committed the murder "as a result of a significant stress in [his] life." Parole Reversal at 2. In so arguing, the Governor sought to negate one of the Board's many findings of circumstances tending to show Hart's suitability for parole. *See* Cal. Code. Regs. tit. 15, § 2402(d)(4) (listing as one of the circumstances tending to show suitability "Motivation for Crime: The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time."). However, the negation of a suitability factor found by the Board cannot serve as "some evidence" of current dangerousness. *See Cooke*, 606 F.3d at 1215 ("A properly disregarded piece of favorable evidence, however, cannot possibly constitute evidence of current dangerousness; that proposition is illogical on its face. Evidence that is excluded is not probative of anything.").

17

13. This conclusion is bolstered by post-*Lawrence* cases in which federal courts have granted petitions similar to Hart's. *See, e.g.*, *Cooke*, 606 F.3d 1206; *Pearson*, 606 F.3d 606; *Fellows v. Hartley*, No. 1:08-CV-01556 OWW JMD, 2010 WL 2902514, at *5-7 (E.D. Cal. July 22, 2010) (granting habeas petition where Board denied parole solely based upon commitment offense and pre-commitment criminal history without relating those factors to current dangerousness); *George v. Sullivan*, ___ F. Supp. 2d ____, 2010 WL 2546042, at *7 (E.D. Cal. June 15, 2010) ("In the absence of an expressly identified nexus, the Court does not see that the circumstances of the offense alone reflect a current level of unreasonable dangerousness. Additional facts, besides the commitment offense, are necessary to show that George poses a current threat."); *Lopez v. Curry*, ___ F. Supp. 2d ____, 2010 WL 2464850, at *3 (N.D. Cal. June 14, 2010) (Alsup, J.) (granting habeas petition even where the record contained some evidence that commitment offense "involved 'some level of premeditation,' a trivial motive of a perceived insult in the bar, 'an exceptionally callous disregard for human suffering and life,' endangering additional people present in the bar, and petitioner's flight after the shooting" because the commitment offense was not probative of current dangerousness); *Hernandez v. R.J. Subia*, No. 2:07-cv-00839-RSL-JLW, 2010 WL 2025330, at *13-16 (E.D. Cal. May 18, 2010) (granting habeas petition for former gang member, who had demonstrated his reformation in prison, even though district attorney lobbied against his release because commitment offense provided no evidence of current dangerousness).